COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-04-504-CR

 

BILLY DEON HILL                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 297TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

------------








Billy Deon Hill appeals his conviction for
murder.  In five points, appellant complains
that: (1) the trial court erred in failing to include a definitional
instruction on reasonable doubt; (2) the evidence is insufficient to sustain
his conviction because the evidence does not establish his identity; (3) the
evidence is insufficient to sustain his conviction because it merely raises a
suspicion of appellant=s participation in the offense;
(4) the trial court erred in denying appellant=s
request for a limiting instruction to the jury regarding extraneous acts; and
(5) the trial court erred in admitting a witness=s
written statement because the witness testified that the statement did not
contain his words and because the statement was hearsay within hearsay.  We affirm.

In his first point, appellant contends that the
trial court erred in failing to define reasonable doubt in the jury
charge.  The Texas Court of Criminal
Appeals has held, however, that no such instruction is required.[2]  Therefore, we overrule appellant=s first
point.

In his next two points, appellant contends that
the evidence is insufficient to support his conviction because testimony of the
State=s
witnesses was insufficient to establish his identity as the murderer and merely
raised a suspicion of his participation in the offense charged. 

To establish that appellant committed the murder
for which he was convicted, the State had to prove that appellant intentionally
or knowingly caused the complainant=s death.[3]
The identity of the perpetrator of an offense can be proved by direct or
circumstantial evidence.[4]  








The evidence supporting the verdict in this case
shows the following:

Appellant and the complainant, Darryl Brown, were
gang members. Appellant was a member of the Polywood Crips gang and Brown was a
member of the Aggland Crips gang.  The
day before the murder, appellant and Brown were involved in an argument that
involved gunshots at the Autumn Chase apartments.  The argument centered around a dispute about
some drugs between Tonya Springer and appellant=s
friend, DeJuan Williams.  Springer=s
boyfriend, Arkete Walker, an Aggland Crips member, came by during the argument,
picked up Springer, and drove to another apartment complex to pick up Brown and
another man.  They all returned to the
Autumn Chase apartments and confronted Williams and appellant.  At some point during the confrontation at the
Autumn Chase apartments, Williams misfired a gun.  Walker and Brown returned fire, shooting at
Williams and appellant, and then left.

Later that evening, Brown went out with his
friend Adam Jones and two girls, Aishia Waller and Billie Jean Fannin.  Ultimately,the four of them arrived at a club
called Fernandez early the next morning. 
Brown was driving, Waller was in the front passenger seat, Jones was in
the back seat on the driver=s side,
and Fannin was in the back seat on the passenger side. 








When the group arrived at the club, the parking
lot was crowded.  As they were waiting to
park, Brown told Jones that he saw the guy he had Agotten
into it@ with
earlier, indicating appellant.  A few
minutes later, someone called to Brown and both Brown and Waller turned to look
out the passenger window.  When they did,
Brown was shot in the back of the head and died almost instantly.  Jones, who was seated behind Brown, testified
that he saw appellant shoot Brown.  

Waller testified that she saw appellant walking
away from Brown=s car immediately after the shot
was fired.  Parchevia Roberson, a
girlfriend of Brown=s, testified that she saw
appellant walking toward Brown=s car
just before the shooting.  Appellant
admitted that neither Waller nor Roberson had any reason to lie.

Both appellant and his girlfriend testified that
he did not commit the offense. 
Additionally, appellant stated that Williams  confessed to the murder. Further, appellant=s
girlfriend testified that Williams came to her house in a white t-shirt with
blood splatters on it shortly after the time of the murder. Also, even though
Williams signed a statement providing that appellant committed the murder, he
denied making the statement at trial.








Whether viewed in a light most favorable to the
verdict,[5]
or in a neutral light,[6]
there is sufficient evidence from which a rational fact-finder could have found
beyond a reasonable doubt that the appellant committed the murder. Accordingly,
because the evidence is legally and factually sufficient to support the jury=s
verdict, we overrule appellant=s second
and third points. 

In his fourth point, appellant contends the trial
court erred in denying his request to include limiting instructions in the jury
charge at guilt-innocence regarding extraneous acts.  During trial, the trial court admitted
evidence about appellant=s drug use and an argument
between appellant and Brown that had occurred less than a day before the
murder.[7]  Appellant did not, however, request a
limiting instruction until after the close of evidence.  Therefore, the evidence was admitted for all
purposes and the trial court did not err by refusing to include a limiting
instruction in the charge.[8]








Appellant further complains that the trial court
failed to submit a reasonable doubt instruction regarding the extraneous
acts.  If a defendant, during the
guilt-innocence phase, asks for a jury instruction on the standard of proof
required for extraneous offenses, the defendant is entitled to that
instruction.[9]  Appellant timely requested such an
instruction.[10]  Therefore, the trial court erred in denying
appellant=s request for a reasonable doubt
instruction regarding extraneous offenses. 








Having determined that charge error
occurred,  we must then evaluate whether
sufficient harm resulted from the error to require reversal.[11]  Error in the charge, if timely objected to in
the trial court, requires reversal if the error was Acalculated
to injure [the] rights of the defendant,@ which
means no more than that there must be some harm to the accused from the error.[12]  In making this determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, the argument of counsel and any other relevant
information revealed by the record of the trial as a whole.@[13]

 In
pertinent part, the charge in this case stated:

Now, if you find from the
evidence beyond a reasonable doubt that . . . [appellant] did . . .
intentionally or knowingly cause the death of an individual, Daryl Brown, by
shooting the said Daryl Brown with a firearm; or he did then and there
intentionally with the intent to cause serious bodily injury to Daryl Brown,
commit an act clearly dangerous to human life . . . which caused the death of
Daryl Brown, then you will find [appellant] guilty of murder as charged in the
indictment.  Unless you so find beyond a
reasonable doubt, or if you have a reasonable doubt thereof, you will acquit
the defendant and say by your verdict not guilty.  

 

Thus, the charge informed the jury that it was to determine appellant=s guilt
or innocence based on the offense charged in the indictment, not on unindicted
offenses. 








The extraneous evidence consisted of several
witnesses= testimony regarding events that
occurred earlier on the day before the murder. 
Those events involved appellant=s drug
use and a confrontation about drugs at the Autumn Chase Apartments between
appellant and his friend, Williams, and Walker and Brown, members of rival
gangs, during which Williams allegedly misfired a gun.  The State used this evidence to show
appellant=s motive for shooting Brown
later that night. 

In addition, as we have just discussed, the State
presented legally and factually sufficient evidence to support appellant=s murder
convictionCwithout the extraneous offense
evidence.  Two witnesses testified that
they saw appellant near Brown=s car
either immediately before or after the shooting.  One witness testified that he saw appellant
shoot Brown.

Further, defense counsel vigorously defended
appellant throughout the trial and in closing arguments.  Defense counsel thoroughly cross-examined the
State=s
witnesses regarding the possibility that they had mistakenly identified
appellant, rather than Williams, as the shooter.  In fact, defense counsel used the extraneous
offense evidence to appellant=s
advantage by pointing out that Williams, rather than appellant, was motivated
by the earlier confrontation to kill Brown. 









Based on our review of the entire record of
appellant=s trial and given all the
evidence that appellant murdered Brown, the court=s
instructions in the charge that the jury was to determine appellant=s guilt
or innocence based on the offense charged in the indictment, alone, and defense
counsel=s use of
the extraneous offense evidence to support the defense=s
mistaken identity theory, we conclude that the trial court=s
failure to give a reasonable doubt instruction at guilt-innocence concerning
the extraneous offense evidence did not create harm that was calculated to
injure appellant=s rights.[14]  Therefore, we hold that the trial court=s error
is harmless.  We overrule appellant=s fourth
point. 

In his fifth point, appellant claims the trial
court erred by admitting Williams=s
written statement because  Williams
testified that the statement did not contain his words and because the
statement was hearsay within hearsay. But because appellant did not make a
hearsay objection until after the trial court had admitted the statement and it
was being read to the jury, he failed to preserve this complaint for our
review.[15]  Therefore, we overrule appellant=s fifth
point.[16]
     

 








Having overruled all of appellant=s
points, we affirm the trial court=s
judgment.

PER
CURIAM

 

PANEL F:    CAYCE, C.J.; GARDNER and WALKER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED:  November 23, 2005











[1]See Tex. R. App. P. 47.4.





[2]Paulson v. State, 28 S.W.3d 570, 572
(Tex. Crim. App. 2000).  We decline
appellant=s request to follow the
dissent in Paulson, rather than the majority.





[3]Tex.
Penal Code Ann.
' 19.02(b)(1) (Vernon
2003).





[4]Earls v. State, 707 S.W.2d 82, 84 (Tex.
Crim. App. 1986); Dimas v. State, 14 S.W.3d 453, 458 (Tex. App.CBeaumont 2000, pet. ref=d).  





[5]See Ross v. State, 133 S.W.3d 618, 620
(Tex. Crim. App. 2004) (setting out the legal sufficiency standard of review).





[6]See Zuniga v. State,
144 S.W.3d 477, 481 (Tex. Crim. App. 2004) (setting out the factual sufficiency
standard).





[7]Appellant does not
complain about the admission of the evidence, but only that the trial court
erred in refusing his request to include a limiting instruction in the charge.





[8]Tex.
R. Evid.
105(a); Hammock v. State, 46 S.W.3d 889, 895 (Tex. Crim. App.
2001).  





[9]Ex parte Varelas, 45 S.W.3d 627, 631
(Tex. Crim. App. 2001).  





[10]Specifically, appellant
requested an instruction that the jury: 

 

[Not] consider said testimony for any purpose unless [it] find[s] and
believe[s] beyond a reasonable doubt the defendant committed such offense or
act, if any, and even then [it] may only consider the same in determining the
plan and intent of the defendant, if any, in connection with the offense, if
any, alleged against him in the indictment in this case and for no other
purpose.





[11]Abdnor v. State, 871 S.W.2d 726, 731-32
(Tex. Crim. App. 1994).





[12]Tex.
Code Crim. Proc. Ann. Art. 36.19 (Vernon 1981); see also Abdnor, 871 S.W.2d at
731-32; Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)
(op. on reh=g).  





[13]Almanza, 686 S.W.2d at 171; see
also Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000). 





[14]Tex.
Code Crim. Proc. Ann. Art. 36.19 (Vernon 1981); see also Abdnor, 871 S.W.2d at
731-32; Almanza, 686 S.W.2d at 171.





[15]See Tex.
R. App. P.
33.1(a)(1); see also Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim.
App. 1995) (stating that if a question calls for an objectionable response, the
defendant should make an objection before the witness responds), cert.
denied, 516 U.S. 832 (1995); Daugherty v. State, 652 S.W.2d 569,
575-76 (Tex. App.CFort Worth 1983, pet. ref=d) (holding objection
untimely when counsel objected on an additional ground after statement had been
admitted and was being read to the jury). 





[16]Appellant has not cited
any legal authority for his argument that the statement should not have been
admitted because it was Anot Williams=s words.@  Therefore, we do not address this issue. Tex. R. App. P. 38.1(h).